# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LADONA A. POORE, | ) |
| Plaintiff, | ) |
| | ) Case No. 11-CV-797-JED-TLW |
| v. | ) |
| | ) |
| STANLEY GLANZ, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Defendant, Stanley Glanz, has filed two separate motions to exclude the expert report and testimony of Jeff Eiser. Plaintiff, LaDona Poore, has designated Mr. Eiser to testify as her expert as to standards in the corrections industry. One of the motions (Doc. 43) is based upon Rules 26 and 37 of the Federal Rules of Civil Procedure; the other (Doc. 47) is premised upon the general standards set forth in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

The facts of this case are fully set out in the Court's Opinion and Order denying Sheriff Glanz's motion for summary judgment. (*See* Doc. 145). In short, Ms. Poore alleges that she was repeatedly sexually assaulted by a detention officer when she was 17 years old while she was held at the David L. Moss Criminal Justice Center (the "Jail") in an area of the Jail with constitutionally inadequate supervision, monitoring, and security. She has sued Glanz under 42 U.S.C. § 1983, alleging that he was deliberately indifferent to an extreme risk of harm to her and that he was responsible for policies and practices which resulted in the risk and thus caused her injury. Eiser's expert report discusses the circumstances which led to the alleged sexual assaults of Poore by a Jail detention officer, and what steps, in his opinion, should have been taken by Glanz to prevent those assaults.

## The Motion to Strike

Glanz seeks to strike Eiser's expert report as untimely, because Poore's counsel submitted the expert witness report six days after the Court's deadline for doing so. Although the report was apparently submitted late and plaintiff did not comply with the rules requiring her to seek an extension or leave to file out of time, Glanz has not identified any prejudice as a result of the six day delay. Accordingly, the Court declines to strike Eiser's report on that ground.

Glanz also asserts that Eiser's report does not comply with Fed. R. Civ. P. 26(a)(2)(B)(i) in that it is not detailed and complete, is general and vague, and is presented without any foundation of proffered facts, analysis or reliance upon generally accepted correctional facility standards. Rule 26(a)(2)(B) provides that an expert report must contain:

(i) a complete statement of all opinions the witness will express and the basis and reasons for them;

(ii) the facts or data considered by the witness in forming them;

(iii) any exhibits that will be used to summarize or support them;

(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

(vi) a statement of the compensation to be paid for the study and testimony in the case.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 26(c)(1). "The reports are intended not only to identify the expert witness, but also 'to set forth the substance of the direct examination.'" *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953

(10th Cir. 2002) (quoting Rule 26 advisory committee note). This allows the opposing party "a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Id*.

Glanz asserts that Eiser's expert report does not provide a complete statement of his opinions or the bases and reasons for them. The Court disagrees. Eiser's report provides a list of his extensive experience in jail facility operations, including staffing and inmate assaults, identifies the materials and facts considered by him in drawing his opinions, and sets forth his opinions about practices at the Jail which failed to protect plaintiff. He also cites various standards upon which he relies, and he generally summarizes his experience as it relates to his opinions. While the Court agrees that the report is in places general, other paragraphs of the report cite specific standards, experience, and evidence upon which Eiser is relying. The substance of the report is sufficient to provide Glanz and his counsel notice as to the opinions and bases therefore so that they can prepare for effective cross-examination. The report therefore complies with the requirements of Rule 26(a)(2)(B), and the motion to strike will be denied.

Issues raised by Glanz under Rule 26 which the Court considers more properly considered under *Daubert* will be addressed below in connection with Glanz's *Daubert* motion.

### The *Daubert* Motion

Glanz requests that the Court enter an order excluding Eiser's expert testimony and precluding him from testifying on behalf of Poore. Glanz asserts that Eiser fails to (1) identify the factual basis and industry standards upon which he relies or (2) identify a methodology used in reaching his opinions.

3

Pursuant to Federal Rule of Evidence 702, "[e]xpert testimony is admissible only if it is potentially helpful to the jury and '(1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the [expert] has applied the principles and methods reliably to the facts of the case.'" *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009) (quoting Fed. R. Evid. 702). In *Daubert*, the Supreme Court suggested factors to guide "trial courts in determining whether proposed expert testimony is based on reliable methods and principles: (1) whether the particular theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community." *Baines*, 573 F.3d at 985 (citing *Daubert*, 509 U.S. at 593-94). The *Daubert* inquiry is "flexible," and the district court does not need to consider every *Daubert* factor. *Id*. at 989–90; *see also Bitler v. A.O. Smith. Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004) ("[T]his list is neither definitive nor exhaustive and ... a trial judge has wide discretion both in deciding how to assess an expert's reliability and in making a determination of that reliability.").

"If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702, advisory committee note; *see also Dean v. Thermwood Corp.*, 10-CV-433-CVE-PJC, 2012 WL 90442 (N.D. Okla. Jan. 11, 2012) ("Where an expert bases his opinions on his experience rather than scientific testing, he still must explain how the experience informs his opinions.").

In *Bitler,* 400 F.3d at 1232, the court discussed the role of district courts when considering a *Daubert* challenge. The court should make a preliminary finding whether the

expert is qualified, by determining "if the expert's proffered testimony ... has 'a reliable basis in the knowledge and experience of his discipline.'" *Id*. at 1232-33 (quoting *Daubert*, 509 U.S. at 592). The proponent of expert testimony must establish that the expert used reliable methods to reach his conclusion and that the expert's opinion is based on a relevant factual basis. *See id.* at 1233. "[A] trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." *Id.* However, an impermissible analytical gap in an expert's methodology can be a sufficient basis to exclude expert testimony under *Daubert. See id.*; *see also Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005).

This Court recently discussed the admissibility of a jail standards expert in *Cox v. Glanz*, 11-CV-457-JED-FHM, 2014 WL 916644 (N.D. Okla. Mar. 10, 2014). There, the Court granted the plaintiff's motion in limine to exclude the defendant's proposed expert, reasoning that his opinions were not helpful to the trier of fact because they were unconnected to any identifiable standards and merely amounted to testimony on an ultimate issue of law—whether the defendant had been deliberately indifferent. *Id*. at *6. The Court emphasized that, where an expert witness's testimony is the type that is dependent on experience, as is the case here, that witness "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Id*. at *4 (quoting Fed. R. Evid. 702 advisory committee's note) (italics omitted).

Eiser's expert report details his qualifications and experience, which are extensive. Eiser states that he has "over 29 years of practical work experience in the operation and administration of one of the largest local corrections systems in the United States." (Doc. 92-1, at 2). He also discusses his writing on the subject of jail administration, having co-authored the "Ohio Jail

5

Administrator's Handbook" and training program curriculum used to train individuals in jail administration. Eiser is also an adjunct instructor in criminal justice and has testified as a jail operations expert since 1994. The Court therefore finds that Eiser is qualified to render a professional opinion regarding jail standards and administration.

Eiser's expert report does not suffer from the same global deficiencies as those found in *Cox*. Here, Eiser's expert report identifies the standards on which he is relying. Those standards include his education, training, and 29 years of correctional experience, as well as knowledge of jail standards in Ohio and nationwide, the Standards for Adult Local Detention Facilities, the Oklahoma Administrative Code, title 30, chapter 670 (Oklahoma Jail Standards), and Core Jail Standards (1st edition, 2010) promulgated by the American Correctional Association. (Doc. 44, ¶ 2). He also cites particular standards within the cited materials, and Eiser connects his opinions to certain standards he considers relevant. (*See id.*, ¶ 14). In another case involving rape at the Jail, the Court recently denied a *Daubert* challenge to very similar expert opinions expressed by Eiser on behalf of that plaintiff. *See Henderson v. Glanz*, No. 12-CV-68-JED-FHM, 2014 WL 2761206 (N.D. Okla. Jun. 18, 2014). As the Court noted with respect to Eiser's opinions in that case, his report is not without fault, but "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Henderson*, 2014 WL 2761206 at *3 (quoting *Daubert*, 509 U.S. at 596).

Overall, Eiser's opinions are helpful to a prospective jury because they may assist the jury in understanding relevant standards in the corrections industry and how sexual assault prevention is, and can be, implemented in jails such as the Tulsa County Jail. Furthermore, his

opinions are the product of a reliable methodology. Accordingly, Eiser's report and his anticipated testimony do not warrant exclusion under Rule 702 or *Daubert*.

However, Eiser's report does contain certain opinions that are not appropriate and will be excluded. For example, Eiser's expert report proposes to opine that the Jail's actions and inactions constitute "deliberate indifference" and were "shocking to the conscious" [sic]. (Doc. 44 at ¶¶ 12, 14, 16a. In *Specht v. Jensen*, 853 F.2d 805 (10th Cir. 1988), the Tenth Circuit concluded that an expert should not be permitted to give an opinion on an ultimate issue of law. 853 F.2d at 807-09. In arriving at that conclusion, the court noted that "a number of federal circuits have held that an expert witness may not give an opinion on ultimate issues of law," and stated:

> The courts in these decisions draw a clear line between permissible testimony on issues of fact and testimony that articulates the ultimate principles of law governing the deliberations of the jury. These courts have decried the latter kind of testimony as directing a verdict, rather than assisting the jury's understanding and weighing of the evidence. In keeping with these decisions, we conclude the expert in this case was improperly allowed to instruct the jury on how it should decide the case. The expert's testimony painstakingly developed over an entire day the conclusion that defendants violated plaintiffs' constitutional rights. . . . By permitting the jury to hear this array of legal conclusions touching upon nearly every element of the plaintiffs' burden of proof under § 1983, the trial court allowed the expert to supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence. . . . In no instance can a witness be permitted to define the law of the case.

853 F.2d at 808-10.

Under the foregoing standards, Eiser's opinions that Glanz exhibited "deliberate indifference" and that the Jail's actions and omissions are conscience shocking will be excluded. The Court will instruct the jury on the meaning of deliberate indifference in the context of plaintiff's claim under 42 U.S.C. § 1983, and it is thus inappropriate for Eiser to specifically opine on whether he believes deliberate indifference is present in this case. In addition, Eiser's

7

opinion that the Jail's conduct was conscience shocking would not be helpful to a jury without any explanation of the context of that legal term of art, as to which Eiser does not have any particular expertise. If any explanation were to be needed, it would be for the Court to provide it. While Mr. Eiser will be permitted to testify in accordance with this Opinion and Order, he is cautioned that testimony prohibited by the principles announced in *Specht* will not be permitted at trial.

IT IS THEREFORE ORDERED that Sheriff Glanz's motion to strike Eiser's testimony (Doc. 43) is **denied**. His *Daubert* motion to exclude the expert testimony of Eiser (Doc. 47) is **granted in part and denied in part**, and Eiser will not be permitted to provide opinions that Glanz or the TCSO were deliberately indifferent or that their conduct shocks the conscience.

SO ORDERED this 29th day of August, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE