## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

LADONA A. POORE,           )
                               )
             Plaintiff,    )
                               )     Case No. 11-CV-797-JED-TLW
v.                            )
                               )
STANLEY GLANZ,        )
                               )
             Defendant.   )

## OPINION AND ORDER

Before the Court is Defendant Stanley Glanz's Motion in Limine (Doc. 46). The facts of this case are fully summarized in the Court's order denying Glanz's motion for summary judgment (Doc. 145).

Although the Federal Rules do not specifically authorize motions in limine, the courts have long recognized the potential utility of pre-trial rulings under the district courts' inherent powers to manage the course of trial proceedings. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008) *aff'd*, 402 F. App'x 337 (10th Cir. 2010) (internal quotations omitted). While pretrial limine rulings can save time and avoid interruptions at trial, a court is almost always better situated during the actual trial to determine the probative value of evidence. *See id.* (citation omitted). For that reason, courts are often reluctant to enter pretrial rulings which broadly exclude evidence, unless it is clear that the evidence will be inadmissible on all grounds. *See Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) ("Unless evidence meets this high standard, evidentiary

rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.").

Each issue raised in Glanz's limine motion is addressed by category below.

**1.      Post-incident conduct by Glanz and/or the Tulsa County Sheriff's Office**

Glanz argues that post-incident conduct should be excluded under Fed. R. Evid. 402 and 407.  Glanz asserts that, following the alleged sexual assaults of Poore in the Jail, the Tulsa County Sheriff's Office (TCSO) installed cameras in the Jail's medical unit, implemented policy that at least two detention officers be posted in the medical unit on all shifts, and instituted other training and policy changes, and evidence of these changes should be excluded as subsequent remedial measures.

Rule 407 of the Federal Rules of Evidence governs subsequent remedial measures.  The Rule provides:

> When measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove:
>
> • negligence;
>
> • culpable conduct;
>
> • a defect in a product or its design; or
>
> • a need for a warning or instruction.
>
> But the court may admit this evidence for another purpose, such as impeachment or--if disputed--proving ownership, control, or the feasibility of precautionary measures.

Fed. R. Evid. 407.

Poore responds that it is well-established in actions under 42 U.S.C. § 1983 that post-event evidence may be relevant and admissible to prove the existence of a practice or custom. The Court previously analyzed the state of the law regarding post-incident evidence in the civil

rights context and concluded that many courts have permitted such evidence to a limited extent, such as to show the policymaker's disposition or the existence of a policy or custom at the time of the incident that is the subject of the lawsuit, but such evidence cannot be used to establish the causation element, given linear reality. *See Cox. v. Glanz*, No. 11-CV-457-JED-FHM, 2014 WL 903101 at **9-12 (N.D. Okla. Mar. 7, 2014).

Poore has not explained how the subsequent installation of cameras reflects the existence of a policy or custom predating the installation of the cameras, so it is unclear to the Court that the installation of cameras would come within the limited category of cases where such post-incident conduct may be admissible. Even if the admission of such evidence were permissible under Rule 407, the jury would likely make improper inferences, such that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or confusion of the jury. Fed. R. Evid. 403. Moreover, Poore will be able to present evidence that the medical unit did not have cameras at the time of Poore's time at the Jail, and the fact that cameras were installed later adds nothing to establish the state of the medical unit at the time Poore was in Jail. Evidence of the subsequent installation of cameras will be excluded at this time, without prejudice.[1]

Glanz's motion indicates that Glanz "implemented policy that at least two detention officers be posted in the medical unit on all shifts, and instituted other training and policy changes." (Doc. 46 at 4). The Court is generally familiar with the evidence presented with the summary judgment briefing, including Sheriff Glanz's deposition testimony. That evidence indicated that Glanz's two detention officer policy was in existence prior to the alleged assaults

---

[1]      To the extent that trial testimony makes the feasibility of camera installation relevant, the Court may revisit its ruling and consider a limiting instruction. *See* Fed. R. Evid. 407 ("the court may admit [evidence of subsequent measures] for another purpose, such as impeachment or – if disputed – proving ... the feasibility of precautionary measures.")

of Ms. Poore. Evidence of the two detention officer policy will not be excluded, although references to any subsequent policy changes will be excluded. To the extent that any other policy and training changes were made subsequent to the assaults of Poore, Glanz has not specified what those policy changes were, and the Court will defer ruling on that issue.

Sheriff Glanz also requests that the Court enter a pretrial order excluding plaintiff's Exhibits 39, 50, 52, 53, 54, 64, 65, 66, 79, 80, 84, 91. These exhibits were not provided with Glanz's motion, and the Court is unwilling to enter a broad pretrial order excluding them entirely without seeing the exhibits and having an understanding of any potentially proper uses of the exhibits. For example, according to Glanz's summary description, certain of the documents apparently do *not* post-date Poore's stay at the Jail. (*See* Doc. 46 at 5-6, descriptions of Exhibits 53, 65). At least one other exhibit was dated or received after Poore was released from Jail, and from its description, it is conceivable that the document may contain information that is relevant to Poore. (*See id.* at 6, description of Exhibits 66). Although plaintiff has not made a claim for a denial of healthcare, it is possible that records of the medical care provider during the relevant time-frame could be relevant to Poore's claims, given that plaintiff was housed in a portion of the medical unit and Glanz and his Jail staff indicated in their depositions that nursing staff were nearby to assist with Poore's care and supervision. (*See id.*, description of Exhibit 53).

Glanz asserts that Exhibit 84 is a schedule for hearings in front of the Review Panel on Prison Rape and Exhibit 91 is a letter from Glanz to the same panel and that those exhibits "ha[ve] no relevance to Plaintiff's claims." (*Id.*). The Court recalls the March 29, 2011 letter, which was submitted in summary judgment briefing. That letter includes information about the Jail from 2008, 2009, and 2010 and is thus not entirely post-incident. That information could be useful as impeachment or to undermine Glanz's argument that the Jail has been recognized as a

Jail with a low incidence of rape and sexual abuse. Those issues were raised by Glanz in arguing for summary judgment, and Poore will be allowed to cross-examine him on the veracity of the data that was presented to obtain the recognition as a Jail with low incidence.

As noted, the Court will defer ruling on the challenged exhibits until the pretrial conference or trial, after the Court has had an opportunity to review the exhibits and has a better idea of the context within which they may be offered.

### 2. Other alleged sexual misconduct at the Jail

Glanz seeks to exclude evidence of other alleged incidents of sexual misconduct within the Jail that does not involve Bowers. He argues that evidence of misconduct by other detention officers should be excluded. According to Glanz, Poore has named a number of former detention officers (Cherry Anjorin, Dana Moses, Kristy Peters) who, if allowed to testify, will not provide any testimony relevant to Poore's claims, but are anticipated to testify, as they did in their depositions, "primarily concern[ing] unsubstantiated rumors about staff-on-staff sexual misconduct within the jail." (Doc. 46 at 8). In response, Poore notes, correctly, that prior incidents of relevant conduct often are not only relevant, but are necessary, in order for a § 1983 plaintiff to establish deliberate indifference and knowledge that a class of prisoners was at risk of harm. Because Glanz did not provide any excerpts of testimony of the referenced witnesses to which he specifically objects, the Court will defer ruling on the request to exclude those witnesses until it has a better understanding of the full scope of those witnesses' testimony. The Court is unwilling to enter a preclusion order completely excluding a witness from testifying based solely upon broad statements that their testimony is irrelevant.

Glanz also seeks pretrial exclusion of Poore's Exhibits 38, 39, 46, 55, 56, 67, 68, 82, and 83. As noted above, without the exhibits, the Court is unwilling to completely exclude those

exhibits. However, based upon Glanz's general summaries of the exhibits, the Court will provide a few observations so that the parties may be better prepared to discuss the exhibits at the pretrial conference. The Court cannot conceive of the relevance of a list of cases filed against Glanz in this courthouse, and is thus inclined to exclude Exhibits 38 and 46 in the absence of a strong showing by plaintiff of the relevance of such exhibits. As noted above, exhibits relating to the Review Panel on Prison Rape, which includes Exhibits 55, 56, 67, 68, 82, and 83, may bear some relevance to the extent that they either disclose information about prior instances of sexual abuse in the medical unit or they may be used to undermine Glanz's assertion that the Jail has been commended as a facility with a low incidence of rape and sexual abuse. As described by Glanz, those exhibits are hundreds of pages in length. The Court has no intention of distracting the jury with lengthy documents containing irrelevant information. The Court expects that, if one or more of the challenged exhibits is ultimately admitted, only the portions of the documents that are actually relevant to Poore's claims in this case will be introduced.

### 3. Accreditation agency audits and evidence of violations of internal policies

Glanz asserts the Court should exclude evidence of alleged violations of internal policies and accrediting agency standards, because Poore has not alleged any particular policy that is unconstitutional or was the proximate cause of Poore's claims. Glanz argues that the courts have rejected the notion that compliance or noncompliance with one agency's local policies or practices is material to the ultimate question of whether a single act violated an individual's constitutional rights. Poore responds that the court in *Tafoya v. Salazar*, 516 F.3d 912 (10th Cir. 2008) expressly held that "the knowing failure to enforce policies necessary to the safety of inmates may rise to the level of deliberate indifference." The Court agrees that Glanz's written policies in existence at the time Poore was in Jail are relevant to the issue of deliberate

indifference. While the alleged failure of Glanz to follow or enforce his own written policies does not establish the existence of an unconstitutional policy, those policies are certainly relevant to the deliberate indifference analysis. If for example, Glanz promulgated particular policies knowing that the safety of inmates like Poore depended upon Jail staff acting in accordance with such policies, but he failed to enforce those policies, a jury could infer that he was deliberately indifferent to risks to Poore's safety.

    **4.**      **Hearsay**

Glanz requests an order "to bar hearsay testimony by and through Plaintiff's witnesses and exhibits," and contends that Poore's exhibits 2, 3, 5, 43, 44, 45, 49, 67, 68, and 87 contain hearsay and should be excluded. Poore responds that she has no intention of introducing inadmissible hearsay at trial, but that Glanz's motion is too vague to result in a pretrial ruling excluding exhibits. Without more analysis and the exhibits themselves, the Court is unwilling to enter a broad pretrial exclusion ruling at this time. This request is denied at this time as it is so broad that it is impossible to determine whether the exhibits are hearsay or are subject to any exceptions to the applicability of the hearsay rule.

    **5.**      **Bowers' polygraph examination**

Glanz argues that Bowers' polygraph examination should be excluded, as Poore has not presented any evidence that polygraph examinations are scientifically reliable under Fed. R. Evid. 702. In the alternative, Glanz argues that, even if the results of the polygraph are admissible under Rule 702, the evidence is still inadmissible as prejudicial under Rule 403. Poore responds that she does not intend to introduce the results of Bowers' polygraph examination, but may introduce evidence that Bowers took a polygraph test and resigned

thereafter. Glanz replies that Poore's intent to indicate that Bowers resigned after taking a polygraph test is just a method of introducing improper evidence through the back door.

The Tenth Circuit "does not have a per se rule banning the introduction of polygraph test results." *United States v. Begay*, 631 F.3d 1168, 1175, n.7 (10th Cir. 2011). The admissibility of such results under Fed. R. Evid. 403 and 702 is assessed on a case-by-case basis. *Id.* Here, Poore agrees that she has no intention of introducing the results, but she intends to introduce evidence that Bowers took the exam and then resigned. The Court generally agrees with Glanz's position that the introduction of evidence proposed by Poore would be asking the jury to draw the inference that Bowers failed the polygraph exam. The Court thus concludes that references to the polygraph examination should be excluded.

IT IS THEREFORE ORDERED that Sheriff Glanz's motion in limine (Doc. 46) is **granted in part and denied in part**, in accordance with the above. The Court has ordered that the parties provide the Court with two sets of each party's exhibit notebooks by December 19, 2014. By that same date, Sheriff Glanz's counsel shall also submit any deposition transcripts or affidavits of witnesses whose exclusion is sought, including Cherry Anjorin, Dana Moses, and Kristy Peters. At the pretrial conference, the parties' counsel shall be prepared to discuss the specific evidentiary issues as to which the Court has deferred a ruling.

SO ORDERED this 29th day of August, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE