**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **LADONA A. POORE,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Case No. 11-CV-797-JED-TLW** |
| | ) | |
| **(1) STANLEY GLANZ,** | ) | |
| **in his Individual Capacity; and** | ) | |
| **(2) MICHELLE ROBINETTE,** | ) | |
| **in her Official Capacity** | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES AND EXPENSES**

Defendants, by and through their attorneys, submit *Defendants' Response to Plaintiff's Motion for Attorney's Fees and Expenses.* [Dkt. No. 239] Plaintiff's *Motion for Attorney's Fees and Expenses* should be denied as it is unreasonable.

## I.     Procedural Summary

The matter was not especially complex concerning allegations of sexual misconduct at the jail which occurred between January and April of 2010.  Plaintiff filed her complaint [Dkt. No. 2] on December 23, 2011.  At the time of the filing of the Complaint, Plaintiff was incarcerated at the David L. Moss Criminal Justice Center.[1]  *See* Docket Sheet attached as Ex. "A."  Motions to Dismiss were filed and denied by Order of the Court on March 6, 2012.  [Dkt. No. 17].  Eight attorneys from three different law firms entered their appearance on behalf of the Plaintiff.  Thereafter, the parties engaged in discovery.  During the discovery period set by the first two Scheduling Orders, [Dkt. Nos. 21 & 27], Plaintiff failed to take any depositions. After the Third Amended Scheduling Order, Plaintiff began depositions in this matter.  Discovery

---

[1] Plaintiff Ladona Poore was originally incarcerated from October 5, 2009 through April 29, 2010.  She was re-incarcerated on July 8, 2010 and released again on October 7, 2010.  She was again incarcerated on September 21, 2011 through September 23, 2011.  Most importantly for purposes of the Prison Litigation Reform Act, 42 U.S.C. § 1997e, Plaintiff Ladona Poore was incarcerated again on October 24, 2011 through January 17, 2012.  Accordingly, she was incarcerated on the date of the filing of the complaint on December 23, 2011.

1

concluded on January 22, 2013.  In total, 12 depositions were taken, 7 by Plaintiff and 5 by Defendants.  No motions to compel were filed by either side.  Dispositive Motions were filed by the Sheriff, both individually and officially, on March 8, 2013.  [Dkt. No. 66].  On June 6, 2013, a stipulation of dismissal was filed dismissing Defendant Seth Bowers.  [Dkt. No. 118].  On August 29, 2014, the dispositive motions were denied [Dkt. No. 146] and the matter was set for pretrial on January 21, 2015 and set for trial on January 26, 2015.  [Dkt. No. 151].  On January 25, 2015, on *Plaintiff's Motion for Emergency Status Conference* [Dkt. No. 162], the Court struck the January 25, 2015 trial date due to Plaintiff's current medical condition.  [Dkt. No. 163].  On March 5, 2015, the matter was set for trial on October 19, 2105.  [Dkt. No. 168].  On October 13, 2015, the Court on its own motion struck the trial date and set it for February 16, 2016.  [Dkt. No. 169].   Thereafter, the matter proceeded to trial before a jury between February 19th and March 1st, 2016.  On March 2, 2016, the jury returned its verdict in favor of the Plaintiff in open court, and the Court entered Judgment for the Plaintiff in the amount of $25,000.00 against Stanley Glanz, in his individual capacity and Michelle Robinette, in her official capacity. [Dkt. No. 226].

On March 30, 2016, Defendants herein filed a F.R.C.P. 50(b) Motion for Judgment as a Matter of Law and/or in the alternative, F.R.C.P. 59 Motion for New Trial challenging the underlying judgment.  [Dkt. No. 229].  Defendants request that any award of attorney's fees and expenses be stayed during post-trial challenges and appeals to the judgment.

## II.   Argument and Authorities

### a.  The Fees and Expenses Sought are in Excess of what is Allowed Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, provides that attorney's fees may only be sought when "the fee was directly and reasonably incurred in proving an actual

violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title" and "the amount of the fee is proportionately related to the court ordered relief for the violation" or "the fee was directly and reasonably incurred in enforcing the relief ordered for the violation." When allowed, the attorney's fees must be calculated in the following manner:

(1) The attorney fee award is capped at 150% of the monetary judgment (42 U.S.C. § 1997e(d)(2)[2]);

(2) The applicable hourly rate is $193.50 (42 U.S.C. § 1997e(d)(3)[3]); and

(3) Up to 25% of the monetary judgment shall be applied to the attorney fee award (42 U.S.C. § 1997e(d)(2)[4]).

Applying the above formula, reveals the following range of values for an attorney fee awarded in this matter:

$$\$25,000.00 \times 150\% = \mathbf{\$37,500.00}[5]$$

$$\$25,000.00 \times 25\% = \$6,250.00$$

$$\$37,500.00 - \$6,250.00 = \mathbf{\$32,250.00}[6]$$

Plaintiff's attorney fee application for an amount that is 20 times greater than what is statutorily allowed as unreasonable *per se* and should be denied. Accordingly, a reasonable fee to be awarded in this matter is between $32,250.00 and $37,500.00 as required under the PLRA.

---

[2] "If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant." 42 U.S.C. § 1997e(d)(2).

[3] "No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of title 18 for payment of court-appointed counsel." 42 U.S.C. § 1997e(d)(3).

[4] "Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant." 42 U.S.C. § 1997e(d)(2).

[5] 42 U.S.C. § 1997e(d)(2) allows for a reduction from the monetary award not to "exceed 25 percent." This attorney fee calculation assumes a 0% reduction from the monetary award.

[6] 42 U.S.C. § 1997e(d)(2) allows for a reduction from the monetary award not to "exceed 25 percent." This attorney fee calculation assumes the maximum of a 25% reduction from the monetary award.

### b.  The Provisions of the PLRA Apply to Plaintiff.

As set forth above, the Complaint was filed on December 23, 2011.  The docket sheet attached hereto as Ex. "A" reflects that Plaintiff Ladona Poore was in custody on November 11, 2011 when she was charged a violation of 21 O.S. § 644, Assault and Battery.  Thereafter, on December 1, 2011, she entered a plea of guilty and sentenced to 90 days in jail.  The docket sheet further reflects that she was released on January 17, 2012.  *See* Ex. "A."  *Most importantly, she was incarcerated on December 23, 2011, the date of the filing of the initial complaint.*

The terms and provisions of 42 U.S.C. § 1997e apply to "any action brought by a prisoner who is confined to any jail, prison, or other correctional facility."  The PLRA defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). It is the plaintiff's status at the time she files suit that determines whether § 1997e applies. *Norton v. The City Of Marietta, OK,* 432 F.3d 1145, 1150 (10th Cir. 2005).   For the PLRA to apply the test is simple – are you confined to a jail at the time of filing? – if so, the terms and provisions of 42 U.S.C. § 1997e apply to your complaint and any award that you may receive. Certainly, Plaintiff believed that the terms and provisions of the PLRA applied to her as she filed a grievance concerning the matter on January 14, 2012.  *See* Ex. "B" attached hereto (Plaintiff's Trial Ex. 4).

Accordingly, Plaintiff's complaint and subsequent award are governed by the attorney fee provisions of the PLRA and Plaintiff's attorney fee award is capped at $62,500.00.

**c. To the extent the Court concludes that the fees are not capped by the applicable provisions of the PLRA, the requested award is unreasonable.**

The United States Supreme Court has held that the lodestar approach is the preferred method to use when determining an award of attorney's fees under § 1988. *See Perdue v. Kenny A.*, 130 S. Ct. 1662, 1672 (2010). Under the lodestar method, the court multiplies a reasonable hourly rate by the number of hours reasonably expended on the case by counsel. *See Bell v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 451 F.3d 1097, 1101 (10th Cir. 2006). In *Perdue*, the Court held that the lodestar method "yields a fee that is presumptively sufficient" to encourage attorneys to take on civil rights cases and this presumption is a "strong" one. *Perdue*, 130 S. Ct. at 1673.

The Tenth Circuit has likewise adopted the "lodestar" approach for determining attorneys' fees under § 1988. *See, e.g.*, *Bell*, 451 F.3d at 1101 n.3 ("Courts determine what is a reasonable fee by first figuring a 'lodestar' amount and then adjusting that figure based on facts specific to the case."); *Dill v. City of Edmond*, 72 F. App'x 753, 757 (10th Cir. 2003) ("To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." (quoting *Robinson*, 160 F.3d at 1281)); *Phelps*, 120 F.3d at 1131 ("A court will generally determine what fee is reasonable by first calculating the lodestar . . . .").

**(1) The requested hourly rate is unreasonable.**

The lodestar approach generally looks to "the prevailing market rates in the relevant community." *Perdue*, 130 S. Ct. at 1672 (quoting *Blum*, 465 U.S. at 895). In setting the hourly rate, the Court must determine what lawyers of comparable skill, experience and expertise practicing in the area in which the litigation occurs would charge for their time. *See Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). The objective of this analysis is to arrive at a

5

prevailing market rate for counsel's services. A reasonable fee in civil rights cases is calculated according to prevailing market rates. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). In setting an hourly rate, a court should establish, from information provided to it and from its own analysis of the level of performance and skills of each lawyer in private firms. *Ramos*, 713 F.2d at 555. Plaintiff sets forth the requested hourly rates of six of her attorneys ranging from $325.00 to $400.00 per hour. Attached as Ex. "C" is the 2016 Local Customary Rate Survey of Tulsa Law Firms. The survey reflects that for lawyers with 13-15 years of experience, the bulk of the attorneys claim a rate between $225.00 and $315.00. The maximum reported rate was $325.00. For attorneys with 16-18 years of experience, the rates ranged from $200.00 to $380.00. For attorneys with 22-24 years of experience, the majority reported a rate between $260.00 and $355.00. Clearly, for attorneys with 13 years of experience (Daniel and Donald Smolen)[7] the rate of $400.00 per hour cannot be supported as a reasonable market rate for their services. With the exception of Mr. Blakemore, none of the attorneys have proffered to the court any history concerning skill, experience and/or any expertise practicing in the area of civil rights.

In 2013, the prevailing rate was determined to be from $250.00 to $300.00 per hour. *See D.G. v. Yarbrough*, U.S. District Court for the Northern District of Oklahoma, Case No. 08-CV-074-GFK-FHM. [Dkt. No. 858]. In 2010, Judge Miles-LaGrange found that $290.00 per hour was "towards the higher end for § 1983 litigation," but appropriate in a civil rights-excessive force case in the Western District. *See Bass v. Pottawatomie County Public Safety Center*, U.S. District Court for the Western District of Oklahoma, Case No. CIV-06-397-M. [Dkt. No. 186].

Statutorily, the PLRA sets forth what is a reasonable hourly rate for an attorney seeking attorney's fees under 42 U.S.C. § 1988 requiring that "No award of attorney's fees in an action

---

[7] Web research reflects that Daniel and Donald Smolen have been licensed to practice law since 2003. No affidavit included within the fee application sets forth their skill, experience and/or any expertise practicing in the area of civil rights.

described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of title 18 [CJA Appointments] for payment of court-appointed counsel." The prevailing rate for CJA appointments is $129.00[8] per hour which yields a presumptively reasonable rate of $193.50 per hour. This rate, though, when applied to the number of hours that Plaintiff's attorneys seek compensation for (1,843.59) yields an attorney fee of $356,734.67 which is in excess of the 150% PLRA cap as set forth above.

Should the court deviate from the required fee cap and hourly rate as set forth in the PLRA, a rate between $250.00 to $300.00 is not challenged as unreasonable.

### (2)   The claimed number of billable hours is unreasonable.

The first step in calculating fee awards is to determine the number of hours reasonably spent by counsel for the party seeking the fees. In the future, district judges in this Circuit will inform lawyers that if they intend to seek attorney's fees under § 1988 they must keep meticulous, contemporaneous time records to present to the court upon request. These records must reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks—for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint, and so on.

The district court must determine not just the actual hours expended by counsel, but which of those hours were reasonably expended in the litigation. When scrutinizing the actual hours reported, the district court should distinguish "raw" time from "hard" or "billable" time to determine the number of hours reasonably expended.

> "Compiling raw totals spent, however, does not complete the inquiry. It does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended. In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."

---

[8] http://www.uscourts.gov/services-forms/defender-services

*Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir. 1983) citing *Copeland v. Marshall,* 641 F.2d at 891 (emphasis in original).  In the instant matter, Plaintiff's attorneys claim a total of 1,843.59 billable hours.  With the exception of Mr. and Mrs. Bullock, none of the attorneys allege that the time was kept "contemporaneously," as required.  Further, only Messrs. Bullock and Mortensen allege that the time represents "hard" billable time.  As shown below, the employment of 8 attorneys - of which 6 have submitted billing records - reveals countless hours of duplication; unnecessary overlap and a wasteful use of attorney resources.

### i.  Tort Claim Notice

As reflected in the Analysis of Hours in Ex. "D" attached hereto, Plaintiff bills 3.8 hours among 3 different attorneys for the Tort Notice Claim.  Such hours are excessive, unreasonable and do not represent actual and reasonable "hard" billable time for the task.

### ii.  Complaint

Plaintiff bills over 34.6 hours for the drafting of the Complaint in this matter among 5 different attorneys.  *See* Ex. "D," pp. 2-3.  Such hours are excessive, unreasonable and do not represent actual and reasonable "hard" billable time for the task.

### iii.  Review and Response to Glanz's Motion to Dismiss

Plaintiff bills over 38.2 hours for the review and drafting of the response to Glanz's Motion to Dismiss among 7 different attorneys.  The Response was 15 pages of written material. *See* Ex. "D," pp. 4-6.  Further, several entries reflect discussions between counsel.  Such hours are excessive, unreasonable and do not represent actual and reasonable "hard" billable time for the task.

#### iv.   Joint Status Report

Plaintiff bills over 7.8 hours for the review and drafting of the Joint Status Report among 7 different attorneys.  _See_ Ex. "D," pp. 7-8.  Further, several entries reflect discussions between counsel, review of the JSR and the motion to extend the time for filing of the JSR.  Such hours are excessive, unreasonable and do not represent actual and reasonable "hard" billable time for the task.

#### v.   Plaintiff's Discovery Requests

Plaintiff bills over 13.7 hours for the review and drafting of Plaintiff's discovery requests. _See_ Ex. "D," p. 9.  Such hours are excessive, unreasonable and do not represent actual and reasonable "hard" billable time for the task.

#### vi.   Plaintiff's Discovery Responses

Plaintiff bills over 48 hours for the review of Glanz's discovery requests and responses thereto by 5 different attorneys. _See_ Ex. "D," pp. 10-12.  The discovery requests consisted of 22 interrogatories and 4 requests for production of documents.  Such hours are excessive, unreasonable and do not represent actual and reasonable "hard" billable time for the task.

#### vii.   Preparation and Attendance for Glanz, Robinette and McKelvey Depositions

Plaintiff bills over 101.2 hours for the preparation and taking of Glanz, Robinette and McKelvey's depositions by 5 different attorneys. _See_ Ex. "D," pp. 13-15.  The depositions of Robinette and McKelvey were done in a single 8-hour day and Glanz's deposition took 6.5 hours.   101.2 hours are excessive, unreasonable and do not represent actual and reasonable "hard" billable time for the task.

**viii.  Emails, Discussions and Conferences between Plaintiff's Counsel**

A significant amount of Plaintiff's time is represented by emails and conferences between her own attorneys.   Plaintiff bills over 137 hours for discussions, email correspondence, telephone calls, reviews and "litigation strategy." _See_ Ex. "D," pp. 16-36.   Generally, where multiple firms represent one client, no more than one attorney should bill for such review time. _See_ _Agape Flights, Inc. v. Covington Aircraft Engines, Inc._, U.S. District Court for the Eastern District of Oklahoma, Case No. CIV-09-492-FHS [Dkt. No. 322].   These hours are excessive, unreasonable and do not represent actual and reasonable "hard" billable time for the task.

**(3)   The Expenses Claimed are Unreasonable**

Plaintiff also requests certain legal expenses for work done by legal secretaries and/or paralegals.   To the extent the submissions reflect any compensable expenses they should be denied as it lacks the requisite detailed entries or the entries reflect secretarial activities which are non-compensable.

> The general premise of billing for paralegal work in these cases is that their fees are allowed if they are for tasks which would otherwise have been performed by a lawyer, but are disallowed if they are for tasks which would otherwise have been performed by a secretary or other clerical worker.
>
>> … paralegals are capable of carrying out many tasks, under the supervision of an attorney, that might otherwise be performed by a lawyer and billed at a higher rate. Such work might include, for example, factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence.
>
> _Missouri v. Jenkins by Agyei_, 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). Such tasks are properly billed to

the client, at a paralegal rate. "Of course, purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them." *Id.,* at 288, 109 S.Ct. 2463.

*Erickson v. City of Topeka, Kansas,* 239 F. Supp. 2d 1202, 1208 (D. Kan. 2002).

### i.   The Time for Betty deJong

The time for Betty deJong should be disallowed in total as the Plaintiff admits that "No time sheets for Betty deJong were submitted."   The failure does not represent the kind of meticulous and contemporaneous time records that are required for compensation of expenses. *Erickson v. City of Topeka, Kansas,* 239 F. Supp. 2d 1202, 1211 (D. Kan. 2002)(Prevailing party in civil rights action was not entitled to recover fees for time spent by paralegal, where paralegal did not itemize his billings, but instead lumped all his tasks together in a generalized description.).

### ii.   The Time for Stephanie Baker

Much of the time set forth by Stephanie Baker represents purely clerical or secretarial tasks that cannot be billed as expenses. <u>See</u> *Erickson v. City of Topeka, Kansas,* above.   The descriptors include emails with court reporters, working on an index, making copies, "proof and format" of documents, confirmation of court reporters, preparation of exhibits, emailing of PDF, inventory of documents, and forwarding transcripts.   Plaintiff's failure to scrub the expenses for "hard billable time" requires that it be disallowed and denied.

### III.    Expert Testimony

Defendants have engaged the services of Jim Connor, a practicing attorney in Tulsa, Oklahoma, member of the Oklahoma Bar, and admitted in the Northern District of Oklahoma to provide review and expert testimony regarding the prevailing market rate for attorneys; and that the expenditure of hours in this matter by Plaintiff's attorneys and fees and expenses sought are

unreasonable with specificity.  He is reviewing materials and will be prepared to testify on June 21, 2016.

### IV.    Conclusion

Based upon the foregoing, Defendants object to the Attorney's Fee and Expenses sought by Plaintiff as they are *per se* unreasonable and fail to apply the provisions of the PLRA attorney fee cap of 150%.  Accordingly, should the court determine that an award is appropriate, it should be between $32,250.00 and $37,500.00 depending on the application of the discretionary reduction under 42 U.S.C. § 1997e(d)(2).    Defendants request that any award be stayed during post-trial challenges and appeals of the judgment.

Respectfully submitted,

*/s/ Guy A. Fortney*
Clark O. Brewster, OBA #1114
Guy A. Fortney, OBA #17027
Corbin C. Brewster, OBA #22075
BREWSTER & DE ANGELIS, PLLC
2617 E. 21st Street
Tulsa, OK  74114
Tel: (918) 742-2021
Fax: (918) 742-2197

**Attorneys for Defendant Stanley Glanz, in his individual capacity and Michelle Robinette, in her official Capacity.**

12

## CERTIFICATE OF SERVICE

I hereby certify May 16, 2016 I electronically transmitted the foregoing document by email and/or U.S. mail to the following:

| | |
|---|---|
| Daniel E. Smolen<br>*Attorney for the Plaintiff* | danielsmolen@ssrok.com |
| Donald Eugene Smolen , II<br>*Attorney for the Plaintiff* | donaldsmolen@ssrok.com |
| Robert Murray Blakemore<br>*Attorney for the Plaintiff* | bblakemore@ssrok.com |
| Lauren Grace Lambright<br>*Attorney for the Plaintiff* | laurenlambright@ssrok.com |
| Louis Werner Bullock<br>*Attorney for the Plaintiff* | lbullock@bullock-blakemore.com |
| Patricia Whittaker Bullock<br>*Attorney for the Plaintiff* | pbullock@bullock-blakemore.com |
| Thomas A. Mortensen<br>*Attorney for Plaintiff* | tmort70@hotmail.com |

*/s/ Guy Fortney*
Guy A. Fortney

14