# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LADONA A. POORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 11-CV-797-JED-PJC |
| | ) |
| (1) STANLEY GLANZ, | ) |
|    in his Individual Capacity; and. | ) |
| (2) MICHELLE ROBINETTE, | ) |
|    in her Official Capacity | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

Before the undersigned United States Magistrate Judge for a report and recommendation is plaintiff's Motion for Attorney's Fees and Expenses (Dkt. 239). Plaintiff seeks recovery of fees in the amount of $659,159,56 as the prevailing party under 42 U.S.C. § 1983 in her lawsuit against the sheriff's office. Id. Defendants do not seem to dispute that plaintiff is entitled to her attorney fees, but they argue that the Prison Litigation Reform Act ("PLRA") applies to cap those fees. (Dkt. 259). Alternatively, defendants challenge plaintiff's counsels' hourly rates and the reasonableness of the number of hours billed. Id.  In the interest of judicial economy, this Report and Recommendation addresses only the issue of whether the PLRA applies in this case to cap Plaintiff's attorney fees.  Following final resolution of that question, the Court will determine the appropriate amount of fees to award.

The Court has reviewed the pleadings and submissions herein, as well as the recording of the November 9, 2016, evidentiary hearing before Magistrate Judge T. Lane Wilson.[1]  On June 27, 2017, the Court held a telephonic status conference with the parties to ensure that the record

---

[1] Following Judge Wilson's resignation, on May 25, 2017, this case was reassigned to the undersigned United States Magistrate Judge.  [Dkt. No. 294].

1

was complete and no additional submissions were necessary. All parties agreed that the matter was fully ripe for determination.

## I.

Plaintiff filed suit against the sheriff, in both his individual and official capacities,[2] on December 23, 2011, alleging that she was the victim of rape and sexual assault at the hands of a male detention officer. (Dkt. 2). The complaint alleges violations of plaintiff's civil rights under 42 U.S.C. § 1988. Id. The case went to trial, and the jury found for plaintiff against the sheriff in both capacities. (Dkt. 224). The jury awarded plaintiff $25,000 in compensatory damages but declined to impose punitive damages. Id.

## II.

Plaintiff's motion seeks attorney fees of $659,159,56, apportioning those fees as follows among plaintiff's three law firms:

    Smolen Smolen & Roytman:    $329,110.00
    Bullock Law Firm:           $218,737.06
    Thomas Mortensen:           $111,312.50

(Dkt. 239). Those fees include hourly rates ranging from $300-400. Id.

Plaintiff acknowledges that the Court has discretion to award attorney fees but argues that fees should be awarded to her as the prevailing party "unless special circumstances would render such an award unjust." Id. at 4 (quoting Kentucky v. Graham, 473 U.S. 159, 164 (1985)). Plaintiff also contends that the hourly rate sought and hours expended by her counsel are reasonable. Id. at 4-6.

Defendants' assert that because plaintiff was in custody at the time she filed this lawsuit, the PLRA imposes a cap on her recoverable attorney fees. (Dkt. 259). Specifically, defendants

---

[2] The Sheriff left office during this litigation, and the interim Sheriff, Michelle Robinette, was substituted as a party.

contend that plaintiff was in custody at the Tulsa County Jail on a subsequent charge beginning November 11, 2011. Id. Plaintiff pled guilty to that charge on December 1, 2011, and was sentenced to 90 days in jail. Id. Defendants contend that she was not released until January 17, 2012. Id. Plaintiff filed the Complaint on December 23, 2011. Id.; (dkt. 2). Defendants contend that the PLRA applies here, because although plaintiff had been released from custody after the sexual assault that took place at the Tulsa County Jail, she was then re-incarcerated on other charges, and, thus, was in jail at the time her lawsuit was filed. Defendants rely on the plain language of the statute, which states that "*any* action brought by a prisoner who is confined to any jail, prison, or other correctional facility" is subject to the PLRA's limitations. Id. (emphasis added).

Where applicable, the PLRA caps attorney fees at 150% of the judgment and applies "[u]p to 25% of the judgment" to the fee award. Id. (quoting 42 U.S.C. § 1997e(d)(2)). Applying that formula, defendants argue that plaintiff is entitled to a maximum award of $37,500 ($25,000 x 150%) less $6,250 ($25,000 x 25%), for a total of $31,250[3] ($37,500 – $6,250).

Alternatively, defendants argue that, even if the PLRA cap does not apply, the hours claimed and rates charged are not reasonable. Id.

In the reply, plaintiff first points out that defendants do not challenge her status as a prevailing party. (Dkt. 269). Plaintiff then argues that the PLRA does not apply for four reasons. One, plaintiff contends that the District Court previously ruled that the PLRA did not apply and that the ruling is the law of the case. Id. (citing Dkt. 165, the pre-trial conference minutes). Two, plaintiff argues that the defendants never raised the PLRA as a defense and have, therefore, waived it. Id. Three, plaintiff argues that, even if the Court were to re-visit the issue, defendants

---

[3]   Defendants incorrectly calculated the amount to be $32,250.

previously conceded (either implicitly or explicitly) that the PLRA does not apply because they failed to present any evidence or argument at the pre-trial conference. Id. Four, plaintiff argues that the PLRA fee provisions should not apply to "the peculiar circumstances of this case" – namely, the fact that all parties believed plaintiff was not incarcerated until four (or more) years after the Complaint was filed. Id.

### III.

42 U.S.C. § 1988(b) provides, in pertinent part, that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." A "prevailing party" is one who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Farrar v. Hobby, 506 U.S. 103, 109, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (internal quotation marks omitted)). Even nominal damages are generally sufficient to declare that a party has prevailed. See id. at 112.

Here, plaintiff obtained a $25,000 judgment against defendants; therefore, she is a prevailing party and entitled to an award of attorney fees and costs. Nonetheless, the court retains discretion in awarding fees, but this discretion is "narrow once the plaintiff meets the 'prevailing party' inquiry." Phelps v. Hamilton, 120 F.3d 1126, 1129 (10th Cir. 1997). Defendants did not challenge plaintiff's assertion that she is a prevailing party. Accordingly, plaintiff is entitled to an award of fees.

If, however, the PLRA applies to plaintiff's fee request, then plaintiff's fee award will be severely limited. The PLRA provides that

> **(1)** In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under section 1988[1] of this title, such fees shall not be awarded, except to the extent that—

>**(A)** the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under section 1988 of this title; and
>
>**(B)(i)** the amount of the fee is proportionately related to the court ordered relief for the violation; or
>
>**(ii)** the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.
>
>**(2)** Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.
>
>**(3)** No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel.
>
>**(4)** Nothing in this subsection shall prohibit a prisoner from entering into an agreement to pay an attorney's fee in an amount greater than the amount authorized under this subsection, if the fee is paid by the individual rather than by the defendant pursuant to section 1988 of this title.

42 U.S.C. § 1997e(d). The term prisoner is defined as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The Tenth Circuit has held that a plaintiff's status at the time suit is filed determines whether the PLRA applies. See Norton v. The City of Marietta, OK, 432 F.3d 1145, 1150 (10th Cir. 2005) (applying this rule in the context of determining whether a former prisoner was required to exhaust administrative remedies before filing suit). The Tenth Circuit has held that the PLRA applies even where an inmate's lawsuit complains of conduct that predates his or her incarceration. Robbins v. Chronister, 435 F.3d 1238 (10th Cir. 2006) (en banc). Robbins is key to this Court's analysis of the applicability of the PLRA here. In Robbins, the Tenth Circuit applied the PLRA fee cap provision to a case in

5

which the plaintiff-inmate sued for alleged violations of his civil rights that occurred before he was incarcerated. See id. at 1239-40. The Tenth Circuit explained that the PLRA was intended to reduce the number of suits filed by prisoners and that the attorney fee cap was intended to incentivize attorneys to pursue only those cases with "significant" damages. Id. at 1244. The Court held that a strict application of the statute, limiting plaintiff's fee award to $1.50, did not produce an "absurd" result. Id. at 1241-44.[4] Based on the record evidence discussed infra at pp. 13-18 and the holding of Robbins, the Court concludes that the instant case also falls within the attorney fee cap of the PLRA – unless one of the four arguments plaintiff raised in her reply provides grounds to ignore the attorney fee cap provision.

## IV.

Plaintiff first argues that the District Court has already ruled that the PLRA does not apply and that this holding is the law of the case. Plaintiff cites to the minutes and a transcript excerpt of the January 21, 2015 pretrial conference. The minutes state, "Court considered particular legal issues presented by Defendant in the proposed Pretrial Order and ruled that the

---

[4] In Robbins, Plaintiff was stopped on outstanding minor traffic warrants by an off-duty Kansas City police officer. During the encounter, the officer smashed the driver's side car window and fired numerous shots at Plaintiff's car. Plaintiff was struck in the abdomen and chest by three bullets. 2002 WL 356331, *1 (D.Kan. Mar. 1, 2002). Plaintiff was subsequently incarcerated on a charge of aggravated assault on a law enforcement officer. During his incarceration, he filed a civil rights lawsuit alleging excessive force by the police officer. Counsel then entered the case on Plaintiff's behalf. Following a bench trial, Plaintiff was awarded nominal damages of one dollar. Counsel sought fees and costs of approximately $25,000. Defendant argued that Plaintiff's fees were capped at $1.50 pursuant to the PLRA. U.S. Magistrate Judge David Waxse found that Plaintiff was subject to the PLRA, but found that applying the statute to limit attorney fees would produce an absurd result. The Court, therefore, rejected the 150% cap.

On appeal, the Tenth Circuit initially affirmed. Robbins, 402 F.3d 1047 (10th 2005). The Court adopted Judge Waxse's reasoning and applied the absurdity exception to the fee limitation. On rehearing en banc, the Circuit reversed, holding that the absurdity exception did not apply. Robbins, 435 F.3d at 1244. See, further discussion of Robbins and the facts presented herein at pp. 12-18 infra.

PLRA exhaustion and fee provisions do not apply." (Dkt. 165, 269-1). Plaintiff submitted the following transcript of the pretrial conference:

> THE COURT: All right. There is an issue that has been raised by the defendant as to the applicability of the PLRA. The defendant raises it as a legal issue. "Whether the Prison Litigation Reform Act applies to the plaintiff's claims." Just for your information, it does not, and that's the court's ruling. The PLRA's exhaustion requirement does not apply and by its plain terms it applies to suits brought by inmates, and if the plaintiff was not an inmate at the time of filing, the PLRA does not apply. I think that's the case here. Although I know Ms. Poore has been incarcerated between 2010 and now but that's my understanding.
>
> Yes, Mr. Fortney.
>
> MR. FORTNEY: This may be putting the cart way before the horse, but the PLRA not only has issues concerning the filing, the exhaustion of remedies and all those sorts of things, but to the extent there's a verdict in this case on plaintiff, it also has application the attorney fees.
>
> I would just make that plain to the court, and to the extent if that becomes an issue, we would certainly renew that with regard to attorney fees at the time of any filing if it's sought.
>
> THE COURT: I understand. I think that the answer would be the same. And I would refer you to prior opinions of the court, including a case of this court's, Revilla v. Glanz. The court cited Norton v. The City of Marietta, Oklahoma, 432 F.3d 1145 at 1150, Tenth Circuit 2005, where the Tenth Circuit directly held that "A plaintiff who seeks to bring suit about prison life after he or she has been released and is no longer a prisoner does not have to satisfy the PLRA's exhaustion requirements before bringing suit."
>
> That is the case as well as to the attorney fee provision, which I know that you have raised this issue. As to whether the proper amount of attorney fees, if any, should be calculated pursuant to the PLRA and the same reasoning as set out in Norton and Revilla on its face states that it applies, and it only applies in any action brought by a prisoner who was confined to jail, to any jail prison or other correctional facility. So it's my reading of it that that's a bump. That's just something that's not going to impact the outcome. All right. At least under the PLRA.

(Dkt. 269-2 at 2-3). There was no further discussion, but the issue of "Whether the Prison Litigation Reform Act applies to plaintiff's claims" was incorporated into the District Court's pretrial order. (Dkt. 171).

7

Under the law of the case doctrine, "once a court decides an issue, the same issue may not be relitigated in subsequent proceedings in the same case." Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah, 114 F.3d 1513, 1520 (10th Cir. 1997). However, the doctrine does not apply until final judgment is entered in a case, so "district courts generally remain free to reconsider their earlier interlocutory orders." Been v. O.K. Indus., 495 F.3d 1217, 1225 (10th Cir. 2007). See also Echo Acceptance Corp. v. Household Retail Services, Inc., 267 F.3d 1068, 1079 (10th Cir. 2001) (finding that a summary judgment ruling did not become law of the case until the final judgment was entered); In re Unioil, Inc., 962 F.2d 988, 993 (10th Cir. 1992) (holding that "where a ruling remains subject to reconsideration, the doctrine is inapplicable.").

The law of the case doctrine differs from res judicata because "the rule is not an 'inexorable command,' but is to be applied with good sense." Major v. Benton, 647 F.2d 110, 112 (10th Cir. 1981) (quoting White v. Murtha, 377 F.2d 428, 431-32 (5th Cir. 1967)). Therefore, the Tenth Circuit advises that "[w]hen a lower court is convinced that an interlocutory ruling it has made is substantially erroneous, the only sensible thing to do is to set itself right to avoid subsequent reversal." Id. (citing Lindsey v. Dayton-Hudson Corp., 592 F.2d 1118, 1121 (10th Cir. 1979)). "Courts have generally permitted a modification of the law of the case when substantially different, new evidence has been introduced, subsequent, contradictory controlling authority exists, or the original order is clearly erroneous." Id. (citations omitted).

The Court made its "ruling" at the pretrial conference, and the case subsequently proceeded to trial and verdict. Based on the undersigned's reading of the pretrial conference transcript, the Court made two limited statements with respect to the application of the PLRA. First, in the context of exhaustion of administrative remedies, the Court found the PLRA inapplicable to plaintiff's situation. Second, the Court stated that the PLRA would not apply *if*

8

plaintiff was not an inmate at the time the Complaint was filed. In fact, the District Judge stated that it was his understanding that plaintiff had been incarcerated off and on during the pendency of the litigation but was *not* incarcerated at the time the Complaint was filed. Defendants did not object to the Court's stated understanding of the facts.

When defendants advised that they would raise the question again if attorney fees were at issue, the Court stated that the analysis would be the same and pointed counsel to cases within the district that had addressed the issue. Nevertheless, the attorney fee issue was not ripe for adjudication at the time of the pretrial conference: There was not yet a prevailing party, no motion was before the Court and no evidence regarding plaintiff's custodial status had been proffered. The Court did state that the PLRA would not apply *if* plaintiff was not incarcerated at the time the Complaint was filed; however, since the Court did not rule specifically on the question of plaintiff's status at the time the Complaint was filed, the undersigned finds plaintiff's argument regarding the law of the case unpersuasive. The issue was not conclusively decided at that time.[5]

Next, plaintiff argues that defendants have waived the right to argue application of the PLRA because they did not raise it as an affirmative defense. (Dkt. 239). In 2007, the United States Supreme Court held that exhaustion of administrative remedies under the PLRA was an affirmative defense to be pled rather than an affirmative statement to be included in the

---

[5]   In spite of the Court's use of the word "ruling," the PLRA question was not actually decided at the pretrial conference. Law of the case doctrine "does not reach a matter that was not decided." Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d §4478, p. 649. The Court made no final ruling as to plaintiff's custodial status at the time the Complaint was filed because there was no evidence before the Court to support such a ruling.

9

complaint.[6] See Jones v. Bock, 549 U.S. 199, 211-17, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). The exhaustion of remedies under the PLRA is mandatory but not jurisdictional. See Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1206 (10th Cir. 2003) (abrogated on other grounds by Jones v. Bock, 549 U.S. 199). The Supreme Court does not address whether a defendant must assert the PLRA as an affirmative defense in order to assert the limitations on attorney fees in cases where exhaustion of administrative remedies is not at issue[7], and the undersigned has not found any guidance from the Tenth Circuit on this issue.

Generally, entitlement to attorney fees in civil rights cases is a collateral decision not directly connected to a decision on the merits. See White v. New Hampshire Dept. of Employment Sec., 455 U.S. 445, 451, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982). As the Supreme Court held in White,

> Section 1988 provides for awards of attorney's fees only to a 'prevailing party.' Regardless of when attorney's fees are requested, the court's decision of entitlement to fees will therefore require an inquiry separate from the decision on the merits – an inquiry that cannot even commence until one party has 'prevailed.' Nor can attorney's fees fairly be characterized as an element of 'relief' indistinguishable from other elements. Unlike other judicial relief, the attorney's fees allowed under § 1988 are not compensation for the injury giving rise to an action. Their award is uniquely separable from the cause of action to be proved at trial.

Id. (citing Hutto v. Finney, 437 U.S. 678, 695 n.24, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978)). At least one district court has applied this principle in the context of the fee cap of the PLRA, which

---

[6] Prior to 2007, the Tenth Circuit placed the burden on plaintiffs to plead exhaustion of administrative remedies as an element of their claims. See, e.g., Fitzgerald v. Corr. Corp. of America, 403 F.3d 1134, 1138-39 (10th Cir. 2005).

[7] In this case, the timing of plaintiff's incarceration renders exhaustion of administrative remedies moot. Plaintiff filed the Complaint on December 23, 2011, and she was released on January 19, 2012. It is not clear whether plaintiff could have pursued administrative remedies to address her claims of sexual assault based on a previous incarceration, but even if she could have done so, she was not incarcerated by the time defendants filed their answer.

limits recovery of fees under 42 U.S.C. § 1988. In <u>Hewins v. Loftis</u>, 2016 WL 4035461, *4 (D.S.C. July 28, 2016) (unpublished)[8], the district court denied without prejudice defendants' motion to amend the answer "to assert the statutory cap on attorney's fees under the PLRA" because the request was premature. This authority is not binding on this court, but the undersigned finds it persuasive because it is consistent with the general rules regarding awards of attorney fees. An affirmative defense is established when a defendant "admits the essential facts of the complaint and sets up other facts in justification or avoidance." <u>Sparta Ins. Co. v. Colareta</u>, 2013 WL 5588140, *2 (S.D.Fla. Oct. 10, 2013). The PLRA's fee limitation provision is not an affirmative defense to a substantive claim. Thus, in light of the fact that neither the Tenth Circuit nor the Supreme Court has addressed whether all limitations of the PLRA must be pled as an affirmative defense in order to be preserved, the undersigned recommends that the District Court view application of the PLRA's fee cap as an issue collateral to the judgment. In this context, the undersigned finds that defendants did not waive their right to seek application of the PLRA because they did not plead it as an affirmative defense in their answer.

Plaintiff next argues that defendants conceded the issue of applicability of the PLRA by failing to present evidence of plaintiff's incarceration when they raised the issue at the pretrial conference. Alternatively, plaintiff argues that because defendants did not have evidence of plaintiff's incarceration until over four years after the filing of the Complaint, it would be absurd to apply the PLRA to limit recovery of attorney fees.

Plaintiff appears to give defendants the benefit of the doubt, arguing that nobody knew for more than four years that plaintiff was a prisoner on the date the Complaint was filed. Plaintiff argues that it would be absurd to penalize plaintiff's statutory right to attorney fees

---

[8]   10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

when even defendants, who control the records, were unaware of her incarceration at the time the Complaint was filed.

The absurdity doctrine provides that a court may disregard the plain meaning of a statutory provision "if it leads to 'results so gross as to shock the general moral or common sense.'"[9] Robbins, 435 F.3d at 1241 (quoting United States v. Newsome, 898 F.2d 119, 121 n.3 (10th Cir. 1990) (internal quotations and additional citation omitted). In Robbins, the Tenth Circuit declined to apply the absurdity doctrine to the PLRA's attorney fee provision to a case in which the plaintiff sued for pre-incarceration violations of his civil rights that occurred during his arrest because he was imprisoned at the time he filed his complaint. See id. at 1239-40. The Tenth Circuit explained that the PLRA was intended to reduce the number of suits filed by prisoners and that the attorney fee cap was intended to incentivize attorneys to pursue only those cases with "significant" damages. Id. at 1244. The Tenth Circuit found "nothing absurd about reducing that incentive for *all* civil-rights claims filed by prisoners," even those "claims arising before incarceration," because "[t]he balance of incentives for disincentives for filing suit is quite different for prisoners than for free persons, regardless of the subject matter of the claim, whether it be prison conditions or preincarceration conduct."[10] Id.

---

[9] In Robbins, the Tenth Circuit stated that to declare a statute invalid under the absurdity doctrine, "it must be one in which **the absurdity and injustice of applying the provision to the case, would be so monstrous, that all mankind would, without hesitation, unite in rejecting the application**." 435 F.3d at 1241 (*quoting Sturges v. Crowninshield*, 4 Wheat. 122, 17 U.S. 122, 202-03 (1819)) (emphasis added). Needless to say, this is a high standard to meet.

[10] Courts in other circuits have also viewed the absurdity doctrine with disfavor in the context of PLRA fee awards. The First Circuit held that fee capping, regardless of the amount of the monetary judgment, serves the PLRA's legislative intent of dis-incentivizing prison litigation. Boivin v. Black, 225 F.3d 36, 39-41 (1st Cir. 2000). The Eighth Circuit quoted approvingly of Boivin in Foulk v. Charrier, 262 F.3d 687, 703-04 (8th Cir. 2001), though it did not add anything new to the discussion. The Second Circuit similarly ruled out the absurdity doctrine in PLRA cases, and held that the rationale that prisoners are "more inclined to bring suits than those who were back in the world and now had less time on their hands and better

In Robbins, the facts were more favorable to that plaintiff than the facts are to plaintiff in the instant case. Here, plaintiff's claims arose out of an incident that occurred while she was incarcerated, unlike the plaintiff in Robbins, whose claims arose out of a pre-incarceration incident. It is also important to note that, in Robbins, a three-judge panel initially found that the PLRA's fee cap should not apply to "civil rights claims arising before the victim of the constitutional violation was incarcerated" because to apply the cap in such cases would lead to an absurd result. See Robbins v. Chronister, 402 F.3d. 1047, 1053-55 (10th Cir. 2005) (reversed by Robbins, 435 F.3d at 1239-41.)  That decision was subsequently rejected by the Court sitting en banc.  Accordingly, consistent with the final Robbins decision, the absurdity doctrine does not apply to application of the PLRA's attorney fee cap in this case.

Finally, having determined that the PLRA's limitation on attorney fees would apply if plaintiff was incarcerated on the date she filed her Complaint, the undersigned turns to the evidence presented by the parties at the hearing on November 9, 2016. (Dkt. 286). In evaluating the evidence, the undersigned finds that the burden of proof lies with defendants to establish that plaintiff was a prisoner on the date the Complaint was filed because plaintiff's status is effectively an affirmative defense. See Roberts v. Barreras, 484 F.3d 1236, 1240-41 (10th Cir. 2007) (relying on the Supreme Court's analysis that the burden of proof lies with defendants in establishing the failure to exhaust administrative remedies under the PLRA and citing Jones v. Bock, 549 U.S. at 214-15). As Roberts notes, the Supreme Court has not defined the burden of proof applicable. See id. at 1240.

---

things to do with it" was enough to justify the PLRA's filing time distinction. Perez v. Westchester Cty. Dep't. of Corrs., 587 F.3d 143, 155 (2d Cir. 2009).

Defendants presented a number of documents from the Tulsa County Jail. (Dkt. 286, Def. Exh. 1-9). Major Eric Kitsch with the Tulsa County Sheriff's Office authenticated the documents and explained how each document evidenced plaintiff's time in the jail. (Dkt. 286).

Exhibit 1 is a booking summary from Tulsa County Jail. A photo and other identifying information at the top of the summary identifies the record as belonging to plaintiff. (Dkt. 286, Def. Exh. 1). The booking summary states that plaintiff entered the Tulsa County Jail under two different case numbers – one described as the State's "Application to Accelerate"[11] and a misdemeanor for assault and battery – on October 24, 2011. Id. at 2. That entry states that plaintiff served a sentence of eighty-five days on the misdemeanor and that the felony was "Dismissed/Withdrawn." Id. The entry further states that plaintiff was released on the felony to her attorney/on her own recognizance on January 13, 2012, but she was not released on the misdemeanor assault and battery until January 17, 2012. Id.

Exhibits 2, 4, and 5 support defendants' contention that plaintiff was not released from jail until January 17, 2012. Exhibit 2 is an Order of Release from Custody, stating that plaintiff was released on the assault and battery misdemeanor on January 17, 2012. (Dkt. 286, Def. Exh. 2). It has an internal stamp of January 18, 2012, and a stamp indicating that it was filed with the state district court on January 20, 2012. Id. Exhibit 4 is a Releasing Inmate Form, dated January 17, 2012 at 21:01. (Dkt. 286, Def. Exh. 4). The form contains check boxes for the procedures necessary to release an inmate, including the return of jail-issued clothing and property, the return of the inmate's property, and a review of all procedures necessary to document the release. Id. Exhibit 5 is the Inmate Clothing Inventory, which evidences the inmate's return of jail-issued

---

[11] The felony case number also includes an entry with the same case and docket number for a misdemeanor described as a "Review Hrng." (Dkt. 286, Def. Exh. 1 at 2). The Application to Accelerate is based on the State's request to accelerate plaintiff's deferred sentence on a felony assault. (Dkt. 286, Def. Exh. 7).

clothing. (Dkt. 286, Def. Exh. 5). This form is utilized at intake and upon release and contains an intake date of October 24, 2011, and a release date, with plaintiff's signature, of January 17, 2012 at 21:15. Id.

The remaining exhibits document plaintiff's stay in the Tulsa County Jail around the time that the Complaint was filed on December 23, 2011. Exhibit 3 is a visitor's log, showing that plaintiff received visitors on December 6, 2011; December 8, 2011; December 27, 2011; January 5, 2012; January 7, 2012; January 10, 2012; and January 14, 2012. (Dkt. 286, Def. Exh. 6). Of those visits, attorney Tom Mortenson visited on January 10, 2012, and attorney Dan Smolen visited on January 14, 2012. Id. These visits indicate that plaintiff's attorneys were aware that she was incarcerated shortly after the Complaint was filed. The visit from attorney Dan Smolen is also relevant to the information contained in Exhibit 3.

Exhibit 3 is a Request Report identifying a grievance filed under plaintiff's name and inmate number. (Dkt. 286, Exh. 3). Major Kitsch testified that these reports were generated by an inmate's use of a computer kiosk in the jail pod at the officer's station. (Dkt. 286, Hearing, Major Eric Kitsch). He explained that the reports were used to request medical services, buy items from the commissary, and file grievances. Id. This report is a grievance filed on January 14, 2012, in which plaintiff states that the sheriff and a detention officer "have been deliberatly [sic] indifferent to my constitutional rights" due to the fact that the detention officer sexually assaulted her on multiple occasions. (Dkt. 286, Def. Exh. 3). The report further states that plaintiff is "seeking monetary damages for this violation." Id. The report is time-stamped 10:43. Id. The visitor's log shows that attorney Dan Smolen visited plaintiff on that same date at 10:02.

The undersigned draws attention to the details of Exhibits 3 and 6 because plaintiff argued at the hearing that the kiosk reports are not a reliable means of determining whether an

inmate is incarcerated. As an example, plaintiff identified a document in defendants' Exhibit 9 that purported to be a kiosk requests for a diabetes blood test. (Dkt. 286, Def. Exh 9). On cross-examination, Major Kitsch admitted that inmates often used each other's IDs to log into the kiosk computers and that there were multiple investigations of misuse of the kiosk computers during his time at the sheriff's office. (Dkt. 286, Hearing, Major Eric Kitsch). Major Kitsch also stated that, although Exhibit 9 indicates that plaintiff did not show for medical appointments on December 20 and 21, 2011, inmates were not permitted to miss medical appointments. Id. Therefore, Major Kitsch admitted that it was possible that the computer record filed under plaintiff's inmate number on December 19, 2011, was not actually filed by plaintiff.

Defendants' Exhibit 9 also includes several other records from the Tulsa County Jail during the relevant time. Plaintiff had a "routine" urine test on November 1, 2011. (Dkt. 286, Def. Exh. 9). Plaintiff filed a kiosk request on December 8, 2011, complaining of a cold. Id. Plaintiff was charged for a clinic visit and two prescriptions on December 14, 2011. Id. Plaintiff filed a request for dental care, with a complaint of nerve pain in her top left tooth, on December 23, 2011 – the very day the Complaint was filed. Id. She was seen in the dental office on December 27, 2011. Id. She filed another kiosk request the same day as her dental visit, complaining of dry socket, but she withdrew it by kiosk request the next day. Id. Finally, on January 4, 2012, plaintiff submitted a kiosk request for testing, shots, and a copy of her immunization record as part of her submission to the Teen Challenge Program.[12] Id.

---

[12] Defendants' exhibits demonstrate that plaintiff sought entry to the Teen Challenge program as a means to serve her sentence on a felony assault charge. Defendants' Exhibit 7 is a request to waive plaintiff's appearance at a sentencing review. Filed with the state court on March 7, 2012, the motion contains the following recitation of facts: (1) plaintiff received a five year deferred sentence on a felony assault charge on July 8, 2010; (2) in July 2011, the State sought to accelerate plaintiff's sentence based on probation violations; (3) the state district court

Plaintiff was ordered to be released from the Tulsa County Jail on January 13, 2012, to serve her sentence on the felony assault from July 2010 through the Teen Challenge Program. (Dkt. 286, Def. Exh. 7). Plaintiff checked into that program on January 18, 2012. (Dkt. 286, Def. Exh. 8).

All this evidence supports defendants' contention that plaintiff was incarcerated on October 24, 2011, and was not released until January 17, 2012. With those dates established, defendants' contention that plaintiff was a prisoner, for purposes of the PLRA, on December 23, 2011 – the date that the Complaint was filed – is also supported by the evidence.

Plaintiff challenged defendants' evidence by submitting documentation from the sheriff's office and the state court docket sheet, which she claims show that she was not incarcerated on December 23, 2011. Plaintiff's Exhibit 3 is the state court docket sheet for plaintiff's felony assault charge. (Dkt. 286, Pl. Exh. 3). Entries from November 14 and 15, 2011, show that plaintiff was in custody. Id. Plaintiff was sentenced on the felony assault on December 14, 2011. Id. On December 19, 2011, the docket indicates that plaintiff was in custody and not present in court. Id. That entry provides that plaintiff is to remain in custody with a note that stated "Bond Previously Exonerated." Id. However, on December 22, 2011 – the day before the Complaint was filed – the docket sheet states that defendant was present in court but was not in custody. Id. That same note states that she was "Remanded to Custody. Bond to Remain." Id. Then, on January 13, 2011, the docket sheet again states that plaintiff is in custody. Id.

Plaintiff's Exhibit 4 is a Jail Credit sheet with plaintiff's name and inmate number, showing that she was booked into the Tulsa County Jail on October 24, 2011 for a 90-day sentence. (Dkt. 286, Pl. Exh. 4). That record shows that plaintiff's anticipated release date, with

---

released plaintiff "from custody on January 13, 2012," to attend the Teen Challenge Program. (Dkt. 286, Def. Exh. 7).

good behavior, was December 13, 2011, ten days before the Complaint was filed. Id. However, at the bottom of that document is a statement, dated January 17, 2012, which notifies the state court that plaintiff had completed her sentence. Id. That statement indicates that plaintiff completed her term on the date the document is signed and not on the anticipated release date.

Plaintiff also submitted several records related to the arrest and booking of the son of a high-ranking sheriff's employee ("the son"). (Dkt. 286, Pl. Exh. 7, 8, 10). Plaintiff's Exhibit 10 is a report from the Broken Arrow Police Department showing that the son was arrested and booked on June 27, 2008. (Dkt. 286, Pl. Exh. 10). However, emails from the Sheriff's Public Information Officer and General Counsel to a local news organization, drafted in response to a public records request, state that there are no records pertaining to the son's arrest on that date. Id. Plaintiff's counsel argued that the discrepancy in records demonstrated that the jail records were unreliable. (Dkt. 286, Hearing, Dan Smolen). At the hearing, both the Public Information Officer and the General Counsel testified that it was possible that the son's record was either sealed or expunged to explain their response to the public records request. (Dkt. 286, Hearing, Justin Green and Meredith Baker).

The undersigned finds that the evidence overwhelmingly establishes that plaintiff was incarcerated on December 23, 2011, when the Complaint was filed. The evidence establishes that plaintiff was booked into the Tulsa County Jail on October 24, 2011, to serve her sentence for misdemeanor assault and battery. Multiple documents, including the visitors log and kiosk requests demonstrate that plaintiff remained in the Tulsa County Jail until she was released on January 17, 2012. Notably, plaintiff filed a request for dental care at a computer kiosk in her assigned pod within the jail on December 23, 2011. Plaintiff's attempts to undermine this evidence are unpersuasive. Accordingly, the undersigned recommends that the District Court

find that plaintiff was a prisoner, as defined in the PLRA, on the date she filed her Complaint and that the PLRA's cap on attorney fees is applicable.

## CONCLUSION

This Report and Recommendation is confined to the issue of whether the PLRA applies to plaintiff's attorney fee request herein. For the reasons set forth above, the undersigned concludes that the PLRA does apply and, thus, limits the amount of attorney fees that the Court may award. However, because determination of any attorney fee award is dependent on a conclusive decision of the PLRA's applicability here, the undersigned has put off consideration of a specific fee award until the District Court and, potentially, the Tenth Circuit, have examined the question.

## RECOMMENDATION

For these reasons, the undersigned recommends that plaintiff's Motion for Fees and Expenses (dkt. 239) be **GRANTED IN PART** and **DENIED IN PART**. Plaintiff is entitled to recover attorney fees; however, that recovery is capped by the PLRA, 42 U.S.C. § 1997e(d). This means that plaintiff is entitled to recover a maximum fee of $37,500.

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by **July 28, 2017.**

If specific written objections are timely filed, Fed. R. Civ. P. 72(b)(3) directs the district judge to:

> determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the

>recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

See also 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**DATED** this 14th day of July, 2017.

_____
Paul J. Cleary
United States Magistrate Judge