# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

LADONA A. POORE,          )
                          )
      Plaintiff,    )
                          ) Case No. 11-CV-797-JED-PJC
v.                        )
                          )
STANLEY GLANZ et al.,     )
                          )
      Defendants.   )

## OPINION AND ORDER

**I.    Background**

Before the Court are plaintiff's Motion for Attorney's Fees (Doc. 239), the Report and Recommendation (R&R) of United States Magistrate Judge Paul J. Cleary (Doc. 300) regarding the Motion, and the plaintiff's Objection (Doc. 303) to the R&R. Following an eight-day jury trial and a $25,000 verdict in favor of plaintiff, the plaintiff moved, pursuant to 42 U.S.C. § 1988, for attorney fees and expenses totaling $659,159.56. (Doc. 239 at 7). In response, the defendants argued that the plaintiff's attorney fees must be capped pursuant to the Prison Litigation Reform Act (PLRA), because, at the time that plaintiff's lawsuit was initiated on December 23, 2011, the plaintiff was incarcerated in the Tulsa County Jail. (*See* Doc. 259 at 1 [citing 42 U.S.C. § 1997e]).

Pursuant to the PLRA, when attorney fees are sought following a judgment in an action brought by a prisoner who is confined to jail, "[i]f the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant." 42 U.S.C. § 1997e(d)(2). Pursuant to the statute, "a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant." *Id.* Thus, defendants argue that plaintiff's total attorney's fees must be limited to 150% of the $25,000 compensatory damages judgment and that 25% of the capped fee award shall be satisfied from plaintiff's damages award.

The plaintiff argues that the PLRA cap on attorney fees does not apply in this case because (1) this Court previously ruled that the PLRA did not apply, (2) the defendants did not assert the PLRA as an affirmative defense, (3) defendants previously conceded that the PLRA does not apply because they did not present any evidence of its application during the pre-trial conference, and (4) application of the PLRA attorney fee limits would yield an "absurd" result. (Doc. 303 at 4).

After thoroughly considering the parties' arguments and evidence, Judge Cleary entered his R&R, in which he recommends that the plaintiff's Motion for Attorney's Fees be granted in part and denied in part. Specifically, Judge Cleary recommends that the Court determine that plaintiff is entitled to recover attorney's fees, but that the defendants' liability for such fees is capped by the PLRA, 42 U.S.C. § 1997e(d). As a result, the R&R recommends that the undersigned determine that plaintiff's attorney fees are limited to a total of $37,500. (*See* Doc. 300 at 19). In her Objection to the R&R, the plaintiff essentially re-urges the same arguments that she presented to Judge Cleary.

## II.     Standard of Review

Pursuant to Fed. R. Civ. P. 54(d)(2)(D), the Court "may refer a motion for attorney's fees to a magistrate judge under Rule 72(b) as if it were a dispositive pretrial matter." Accordingly, the magistrate judge's proposed disposition of an attorney fee matter is subject to the de novo review standard applicable to objections filed as to dispositive motions under Fed. R. Civ. P. 72(b), and this Court therefore "must determine de novo any part of the magistrate judge's disposition that has been properly objected to" and "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

## III. Discussion

### A. The PLRA Fee Cap

Prevailing plaintiffs in actions brought under 42 U.S.C. § 1983 may be awarded a reasonable attorney's fee under 42 U.S.C. § 1988. The defendants here do not challenge the plaintiff's prevailing party status or right to fees under § 1988. However, the defendants argue that the PLRA limits the amount of recoverable fees under § 1997e(d)(2), which provides that, when attorney fees are sought following a judgment in an action brought by a prisoner who is confined to jail, "[i]f the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant." 42 U.S.C. § 1997e(d)(2). Courts have interpreted the statute to limit a defendant's liability for attorney fees to 150% of a money judgment. *E.g., Robbins v. Chronister*, 435 F.3d 1238, 1240 (10th Cir. 2006) (en banc) ("The statutory language [of § 1997e(d)(2)] may be inartful, but appellate courts have consistently interpreted the statute to limit a defendant's liability for attorney fees to 150% of the money judgment."). The application of this formula in this case would result in limiting total attorney's fees to $37,500.

The PLRA fee cap does not apply except in actions "brought by a prisoner who is confined to any jail, prison, or other correctional facility." *See* 42 U.S.C. § 1997e(d). Thus, the principal issue in determining whether the cap applies is whether the plaintiff was incarcerated at the time the suit was filed. *See Robbins*, 435 F.3d at 1240; *see also Norton v. City of Marietta*, 432 F.3d 1145 (10th Cir. 2005).[1]

---

[1] *Norton* involved the application of the PLRA exhaustion requirement, which is not at issue with respect to the plaintiff's fee motion. The defendants apparently did not present any exhaustion argument on appeal, and the monetary judgment has been affirmed by the Tenth Circuit.

### B. Incarceration at the Time of Filing

The plaintiff argues that the defendants did not meet their burden to establish that the plaintiff was in jail at the time this suit was initiated. Judge Cleary found that "the evidence overwhelmingly establishes that plaintiff was incarcerated on December 23, 2011, when the Complaint was filed." (Doc. 300 at 18). The plaintiff objects to that recommended finding. The plaintiff principally relies upon the testimony of Thomas Mortensen, who represented the plaintiff in criminal proceedings. (Doc. 303 at 12). Plaintiff faults the R&R because it does not discuss Mr. Mortensen's testimony. (*Id.*). In addition, the plaintiff argues that the evidence provided by the defendant and cited in the R&R for the proposition that the plaintiff was in the jail between October 24, 2011 and January 17, 2012 is unreliable, such that "there is no reliable evidence that Plaintiff was in custody on December 23, 2011" when the Complaint was filed. (*Id.*). With respect to unreliability, the plaintiff points to the testimony of Tulsa County Sheriff's Office (TCSO) Major Eric Kitch and former TCSO Captain Billy McElvey that inmates sometimes utilize other inmates' kiosk credentials to make kiosk requests. Plaintiff argues that such evidence undermines certain kiosk records attributed to the plaintiff. (*Id.*).

The Court has examined the evidence that was admitted at the hearing before the magistrate, which included Plaintiff's Exhibits (PX) 1 through 8 and 10, and Defendants' Exhibits (DX) 1 through 9 and the testimony of Major Kitch, plaintiff's attorney Thomas Mortensen, Billy McKelvey, Tulsa County attorney Meredith Baker, and TCSO Public Information Officer Justin

Green.[2]  Major Kitch testified that DX 1 was the jail's Booking Summary for the plaintiff. According to Kitch, each time a person is booked into the jail, a new booking number is generated, and that booking number is utilized until the person is released from the jail. If that person is subsequently booked into the jail again, a new booking number is generated to cover that incarceration. (*See* DX 1).

During the time covering the date of the filing of the plaintiff's Complaint, the plaintiff's Booking Summary shows that she was booked into the jail on October 24, 2011. (*Id.*). Booking number 1302070 was generated at the time of booking. Under that booking number, the jail record indicates a "Booking Date" of 10/24/2011 and a "Release Date" of 1/17/2012. (*Id.*). The same document reflects that plaintiff spent 85 days in jail and that she served a sentence on a misdemeanor charge in Tulsa County Case No. CM-11-5420. (*Id.*). Major Kitch testified that, if plaintiff had been released and rebooked between October 24, 2011 and January 17, 2012, the system would have created a new booking number and a new custody entry on DX 1. There is no indication that she was released and rebooked during that timeframe.

Kitch also testified about DX 2, which is an Order of Release from Custody, signed by a Tulsa County Deputy Court Clerk on January 17, 2012, reflecting "Sentence Served" on Case No. CM-11-5420. (DX 2). The January 17, 2012 release date is consistent with the Booking Summary. (*See* DX 1, DX 2). The release date on those forms is also consistent with the Jail's Releasing Inmate Form, dated January 17, 2012 at 2101 hours, which reflects plaintiff being sent from

---

[2] Ms. Baker and Mr. Green testified regarding requests by the plaintiff's counsel for jail records relating to a possible booking of a family member of a former TCSO high-ranking official. The plaintiff's counsel presented their testimony and records relating to that official's family member in an attempt to show that the jail's records were unreliable. The Court has considered the testimony and PX 7, 8, and 10 and does not consider that evidence to substantially undermine the evidence with respect to *Ms. Poore's* custodial status in the relevant time-frame.

housing unit F20 Pod, Cell Q1, to the officers' station for release. (DX 4). She was then sent to the release area at 2115 hours. (*Id.*). Plaintiff signed an inmate clothing inventory sheet on January 17, 2012 to receive the clothes she wore when booked into the jail on October 24, 2011. (DX 5). The Visitor Log for Booking Number 1302070 reflects visits from plaintiff's attorneys Tom Mortensen on January 10, 2012 at 12:12 p.m. and Dan Smolen on January 14, 2012 at 10:02 a.m. (Doc. 6). Plaintiff's counsel did not dispute that they visited plaintiff in the jail on those dates.

Following her release on January 17, 2012, plaintiff checked into the Teen Challenge program. (*See* DX 8). Mr. Mortensen testified that he believed that date was correct. While the plaintiff's counsel elicited testimony that the jail's kiosk system for inmate requests was imperfect and that at times inmates utilized other inmates' credentials to make kiosk requests, the plaintiff did not present evidence that would overcome the defendant's other evidence that the plaintiff was in custody at the time the case was filed. For example, while the plaintiff pointed to a few potential discrepancies between court records in the felony case docket and jail records, plaintiff did not present any evidence to show any specific dates she claims not to have been in custody between October 24, 2011 and January 17, 2012. The plaintiff's inferences that the kiosk records were unreliable did not refute other jail and court records and testimony showing that plaintiff was in jail during the entirety of time from October 24, 2011 through January 17, 2012.

Mr. Mortensen's testimony was equivocal as to whether or not plaintiff was in custody on the date this action was filed. When presented with the felony case docket sheet (PX 3), Mortensen testified that there appeared to be inconsistencies on that docket as to plaintiff's custodial status, but he indicated that he could not tell whether or not plaintiff was in custody on December 23, 2011. When presented with an amended order of deferred sentence in the felony case (PX 6), he testified that the document indicated that plaintiff should not have been in custody on *that case*,

6

but that she may have been in custody on another case. He also testified that Judge Glassco, who was presiding over the felony case (Tulsa County Case No. CF-08-5309), at times held plaintiff in custody due to concerns about drug abuse prior to her entrance into the Teen Challenge program.

Plaintiff's counsel principally relied upon one entry on the CF-08-5309 docket sheet that stated that plaintiff was "not in custody" (*see* PX 3 at 3, 12-22-2011 entry), but all other entries on that docket from October 24, 2011 through January 13, 2012 reflect that she was "in custody." (*See* PX 3). The Minute entry for October 24, 2011 – the day jail records reflect that she was booked into the jail – stated "defendant remanded to custody [and] commitment issued to jail." (*Id.* at 2) (emphasis omitted). Minutes on October 25 indicated that she was "in custody" and was "to remain in custody with no bond." (*Id.*). Judge Glassco's minute entries on November 14 and 15, 2011 stated that plaintiff was "in custody" and was "remanded to custody." (*Id.*). For December 19, 2011, court minutes in that case reflected that the defendant was "in custody" and "remains in custody." (*Id.*). The December 22 minute upon which plaintiff has relied is the only entry during the October 24, 2011 to January 17, 2012 time-frame which indicates that plaintiff was not in custody, and the end of that minute entry provides that "defendant [was] remanded to custody." (*Id.*). That was the day before this case was filed. The next hearing entry on that docket reflects that plaintiff was "in custody" and that a release was issued to the jail with defendant to participate in Teen Challenge. (*See id.*).

Plaintiff presented PX 5, which was a "Jail Credit" sheet that was completed the date of the plaintiff's release from the jail on January 17, 2012, but which reflected an "estimated release date" of December 13, 2011. However, the document does not indicate that the plaintiff was actually released on December 13, 2011, and the plaintiff has not contested that she was released on January 17, 2012, which is consistent with other jail records. PX 5 also contains a booking sheet

dated January 17, 2012, which reflects that a review hearing was set in the CF-08-5309 case on January 13, 2012. (*See* PX 5). As noted, the minutes for that hearing indicate that she was in custody at the outset of that hearing.

Upon carefully examining the evidence admitted at the hearing, the Court determines that the defendants met their burden to show plaintiff was in custody from October 24, 2011 until January 17, 2012, including December 23, 2011, the date this case was filed.

### C. Law of the Case

In an effort to avoid application of the PLRA fee cap, the plaintiff also cites this Court's comments at the Pretrial Conference in this case. In the proposed Pretrial Order, the defendants listed as issues "Whether the [PLRA] applies to Plaintiff's claims" and "Whether the proper amount of attorney fees, if any, should be calculated pursuant to the PLRA." (Doc. 171 at 6, ¶ 12). At the pretrial conference, the undersigned addressed the PLRA issues and stated:

> The PLRA's exhaustion requirement does not apply and by its plain terms it applies to suits brought by inmates, and if the plaintiff was not an inmate at the time of filing, the PLRA does not apply. I think that's the case here. Although I know Ms. Poore has been incarcerated between 2010 and now, but that's my understanding.

(Doc. 265 at 18). In responding to the Court's statements, counsel for the defendants did not indicate that the undersigned's understanding of the plaintiff's custodial status was wrong, and counsel did not provide any information or reference any facts indicating that the plaintiff was in custody on the day of the filing of the lawsuit. (*Id.* at 19). However, the defendants did not give up on their argument as to the PLRA's possible application to any attorney fees. (*See id.* [defense counsel stated that "it also has application [to] the attorney fees . . . and we would certainly renew that with regard to attorney fees at the time of any filing if it's sought."]). The minutes of the Pretrial Conference indicated that the "Court considered particular legal issues presented by

Defendant in the proposed Pretrial Order and ruled that the PLRA exhaustion and fee provisions do not apply." (Doc. 156 at 3, ¶ 5).

As a result of the Court's comments and minutes of the Pretrial Conference, the plaintiff argues that the law of the case doctrine applies and the issue was determined. However, the law of the case does not prevent a different ruling where the prior ruling remains subject to reconsideration. *In re Unioil, Inc.*, 962 F.2d 988, 993 (10th Cir. 1992); *see also Been v. O.K. Indus.*, 495 F.3d 1217, 1225 (10th Cir. 2007). The attorney fee issue was not ripe for determination at the time the Court indicated it believed that the plaintiff was not in custody when the case was filed and the PLRA would not apply to fees. As a result, it is appropriate for the Court to revisit this issue now that it is ripe and the parties have presented their positions regarding the plaintiff's custodial status at the time the suit was filed.

### D. Waiver

The plaintiff is correct that defense counsel did not provide any facts or argument at the Pretrial Conference to disabuse the undersigned of his mistaken belief that the plaintiff was *not* in custody when this case was filed. Defense counsel did, however, reiterate the defendants' position that they were preserving the PLRA's application to any potential fee award in the future. Indeed, the defendants preserved that issue as an "issue of law" in the Pretrial Conference Order which was filed prior to trial. (*See* Doc. 171 at 6, ¶ 13 ["Whether the proper amount of attorney fees, if any, should be calculated pursuant to the PLRA."]).

Plaintiff cites two cases in support of her waiver argument. (Doc. 303 at 10). Those cases stand for the proposition that the issue of PLRA exhaustion of administrative remedies is an administrative defense that must be asserted by the defendant in a responsive pleading. The plaintiff has not cited any authority requiring that a defendant assert the PLRA *attorney fee*

9

*calculation provisions* as an affirmative defense prior to judgment, and the Court has not located any such authority. The Court agrees with Judge Cleary's analysis that the attorney fee issue was not ripe for determination until after trial, and the defendants did not waive any arguments on the PLRA fee cap by failing to assert it as an affirmative defense in their answer. In any event, as noted, the defendants did preserve that issue in the Pretrial Order.

### E. The Absurdity Doctrine

In her final argument, the plaintiff urges the Court to find that application of the PLRA fee cap would yield an "absurd" result under the facts of this case. "[A]n interpretation of a statute is absurd if it leads to 'results so gross as to shock the general moral or common sense.'" *Robbins v. Chronister*, 435 F.3d 1238, 1241 (10th Cir. 2006) (quoting *United States v. Newsome*, 898 F.2d 119, 121, n. 3 (10th Cir. 1990)) (internal quotations and citations omitted). If the plain meaning of a statute "is to disregarded . . . it must be one in which the absurdity and injustice of applying the provision to the case, would be so monstrous, that all mankind would, without hesitation, unite in rejecting the application." *Id.* (quoting *Sturges v. Crowninshield*, 17 U.S. 122, 202-03 (1819)). As a result, the Tenth Circuit has explained the rarity with which application of the plain text of statute will be deemed absurd:

> One claiming that the plain, unequivocal language of a statute produces an absurd result must surmount a formidable hurdle. It is not enough to show that the result is contrary to what Congress (or, perhaps more accurately, some members of Congress) desired. In other words, we cannot reject an application of the plain meaning of the words in a statute on the ground that we are confident that Congress would have wanted a different result. Instead, we can apply the doctrine only when it would have been unthinkable for Congress to have intended the result commanded by the words of the statute – that is, when the result would be "so bizarre that Congress could not have intended it." . . . [W]e cannot reject the plain meaning of statutory language just because Congress may not have anticipated the result compelled by that language in a particular case.

*Robbins*, 435 F.3d at 1241-42 (internal citations omitted).

The plaintiff points to the fact that she hired counsel to prosecute this civil rights action after she was released from the incarceration during which she was sexually assaulted. Thus, she asserts that it is absurd to limit attorney's fees simply because she happened to be back in jail on the date her attorneys – who were hired when she was not in custody – decided to file this action. (Doc. 303 at 16). Plaintiff further notes that she was released from jail 25 days after the Complaint was filed and, had defendants raised the PLRA fee cap issue before the pretrial order was circulated, the plaintiff could have voluntarily dismissed the case and re-filed it when she was not in custody and thereby avoided the application of the PLRA cap. (*See id.*).

The plaintiff's arguments are not without some merit. The application of the PLRA fee cap yields results that may be characterized as seemingly unfair, but application of the cap is not "monstrous" or "absurd" under the Supreme Court and Tenth Circuit precedent by which this Court must abide. In *Robbins*, the Tenth Circuit determined that application of the absurdity doctrine to the PLRA fee cap was "not a close case." 435 F.3d at 1244. There, the plaintiff, Ralph Robbins, was shot by a law enforcement officer after the officer broke Robbins's car window with a baton during an attempted apprehension on outstanding warrants. *Id.* at 1239-40. Robbins filed a civil rights claim alleging excessive force, and the district court appointed counsel for him. The trial court ultimately determined that the officer's use of deadly force in firing at plaintiff did not violate the Fourth Amendment, but breaking the car window with a baton was unreasonable. The trial court then awarded nominal damages in the amount of $1.00. *Id.* at 1240. When the plaintiff applied for attorney fees, the defendant objected and argued that the PLRA capped attorney fees at 150% of damages because the plaintiff was incarcerated at the time the suit was filed.

The district court in *Robbins* awarded an attorney fee of $9,680 upon finding that it would be absurd to apply the PLRA fee limitation to suits on claims arising before the prisoner was

incarcerated. The district court believed that Congress could not have intended the PLRA fee cap to apply to meritorious civil rights claims that arose prior to a prisoner's confinement. *Id.* The officer appealed the fee award. On appeal, the Tenth Circuit reversed the district court's award of fees and remanded for an award of fees limited to $1.50. After noting the "formidable hurdle" attendant to refusing to apply the plain language of the PLRA cap because of alleged absurdity, the Circuit reasoned that, "even though one could argue that applying the PLRA cap to cases like this is not the most rational means for controlling litigation, such a result is certainly not outside the bounds of legitimate legislative compromise." *Id.* at 1244. The court further reasoned that "there is simply nothing bizarre about treating prisoner suits alleging preincarceration civil-rights violations the same as prisoner suits alleging violations of civil rights during incarceration." *Id.* Finally, the court noted that there was "nothing absurd about applying the restriction on attorney-fee awards to prisoner civil-rights claims arising before incarceration as well as to such claims arising during incarceration." *Id.*

The plaintiff argues that *Robbins* is distinguishable and that the Court should apply the absurdity analysis from *Morris v. Eversley*, 205 F. Supp. 2d 234, 241 (S.D.N.Y. 2002). The Second Circuit came to a different conclusion than the judge in *Morris* regarding the application of the absurdity doctrine to the PLRA fee cap. *See Perez v. Westchester Cty. Dep't of Corrections*, 587 F.3d 143, 154 (2d Cir. 2009). The court in *Perez* was unpersuaded by *Morris* and arguments similar to those presented by the plaintiff here, including the alleged absurdity of prisoners withdrawing suits filed while in jail and refiling upon release, or the disparity between prisoners who file while incarcerated and those who wait until they are released before filing. *See id.* at 154-155 (noting that "[w]hile not without some merit, these arguments do not persuade us."). Moreover, this Court is bound by Tenth Circuit precedent, including *Robbins*. While application

of the PLRA cap may seem somewhat unfair under the circumstances, the Court, "out of respect for [its] limited role in tripartite government, [cannot] rewrite legislative compromises to create a more coherent, more rational statute." *Robbins*, 435 F.3d at 1243. Accordingly, the Court declines to apply the absurdity doctrine and render the PLRA fee cap inapplicable here.

## IV. Conclusion

For the foregoing reasons, the plaintiff's Motion for Attorney's Fees (Doc. 239) is **granted in part and denied in part**. The plaintiff's Objection (Doc. 303) is **denied**. The R&R (Doc. 300) is **accepted**. After the briefing and R&R were completed in this case, the Supreme Court held that, "[i]n cases governed by § 1997e(d), . . district courts must apply as much of the judgment as necessary, up to 25%, to satisfy an award of fees." *Murphy v. Smith*, __ U.S. __, 138 S. Ct. 784, 790 (2018). The Court in *Murphy* determined that a defendant is not liable for that portion of PLRA capped fees that is equal to 25% of the plaintiff's damages award. *See id.*

Accordingly, applying § 1997e(d), plaintiff's attorney's fees in this case are capped at $37,500, which is 150% of the plaintiff's damages judgment. Under *Murphy*, 25% of the judgment, or $6,250, must be applied pursuant to § 1997e(d) to satisfy fees, and the defendants are liable only for the remainder ($31,250) of the total capped fees. A separate attorney fee judgment will thus be entered in favor of the plaintiff and against the defendants, in the amount of $31,250.[3]

SO ORDERED this 30th day of March, 2019.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] Because the defendants did not object to the R&R, and they do not challenge that a lodestar calculation of plaintiff's attorney's fees would well exceed the cap, it is unnecessary to return this matter to Judge Cleary for a lodestar calculation. On this record, returning this matter for further proceedings would unnecessarily waste time and impose additional expenditures of attorneys' time in a case where fees have already been significantly limited because of the PLRA cap.